IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Aitheras Aviation Group, LLC<br>2301 N. Marginal Road<br>Cleveland, OH 44114, | )<br>)<br>) | CASE NO.<br><br>JUDGE |
| | ) | |
| Plaintiffs, | )<br>) | |
| | ) | **COMPLAINT FOR DAMAGES AND** |
| v. | ) | **INJUNCTIVE RELIEF** |
| | ) | |
| Kevin T. Weir<br>13 Little Sewickley Creek Road<br>Sewickley, PA 15143, | )<br>)<br>) | |
| | ) | |
| Carol Weir<br>13 Little Sewickley Creek Road<br>Sewickley, PA 15143, | )<br>)<br>) | |
| | ) | |
| 13 Little, LLC<br>13 Little Sewickley Creek Road<br>Sewickley, PA 15143. | )<br>)<br>) | |
| | ) | |
| Defendants. | ) | |

For its Complaint against Defendant Kevin T. Weir ("Weir"), Carol Weir ("Carol Weir"), and 13 Little, LLC ("13 Little") (collectively referred to herein as "Defendants"), Plaintiff Aitheras Aviation Group, LLC ("AAG" or "Plaintiff") hereby states as follows:

**PARTIES**

1. AAG is an Ohio limited liability company engaged in the operation of air ambulance and on-demand air charter services. AAG conducts its business worldwide, and throughout the United States and the State of Ohio, and maintains its principal place of business in Cleveland, Ohio.

2. Defendant Weir is a former employee and corporate executive of AAG who currently resides, upon information and belief, at 13 Little Sewickley Creek Road, Sewickley, PA 15143. Weir worked for AAG at its Ohio principal office, and traveled regularly to Ohio to conduct business on behalf of and perform services as an employee of AAG, and regularly accessed confidential information maintained on AAG's server, which is located in Ohio. Weir is a party to a Promissory Notice issued by Defendants on or about January 12, 2018 in favor of Plaintiff.

3. Defendant Carol Weir is a resident of Pennsylvania, and is a party to a Promissory Note issued by Defendants on or about January 12, 2018 in favor of Plaintiff.

4. Defendant 13 Little is a Pennsylvania limited liability company which is a party to a Promissory Note issued by Defendants on or about January 12, 2018 in favor of Plaintiff.

5. Cuyahoga County, Ohio is a county in which Defendants have conducted and/or are conducting activity which gave rise to the instant claims for relief, and a county in which AAG has suffered, and will continue to suffer, damages as a result.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because AAG (an Ohio citizen) and Defendants (all Pennsylvania citizens) are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This court has personal jurisdiction over Weir because in his Employment Agreement, he "agree[d] that any lawsuit between [the parties] arising under this Agreement shall be filed in any state or federal court located in the state of Ohio," and further "agree[d], acknowledge[d], and submitte[d] to the exclusive jurisdiction and venue of such courts for purposes of such lawsuit," and finally waived any right he "may have to object to such

jurisdiction" over him.  (*See* Employment Agreement, a true and accurate copy of which is attached hereto as Exhibit A, §9.9).

8. Venue is appropriate in this judicial district pursuant to 28 U.S.C. §1391(a)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this district, and because Weir, through §9.9 of the Employment Agreement, has consented to venue in this Court.

## FACTS COMMON TO ALL COUNTS

### Weir's Employment With AAG

9. AAG engaged Weir as a consultant beginning in 2011 to review AAG's operations and assist with commercial insurance billing practices and accounts receivable.

10. On or about October 1, 2015, AAG hired Weir as an employee, in the position of Chief Operating Officer.

11. In his position as Chief Operating Officer, Weir was responsible for, among other things, planning and directing all aspects of Plaintiff's operational policies and objectives, attaining Plaintiff's financial goals, developing external relationships with customers, financiers, vendors, and the general communities in which Plaintiff operates, negotiating and approving contracts, and analyzing operations to evaluate performance of Plaintiff.  Weir regularly accessed confidential and/or trade secret information of AAG, including information maintained on AAG's server, located in Ohio.

12. During his employment with AAG, Weir gained extensive, detailed knowledge of confidential and/or trade secret information developed and used by AAG. This confidential and/or trade secret information was developed by AAG through substantial expenditure of time, effort, and money, and derives independent economic value by virtue of the fact that it is not

generally known or ascertainable by proper means by others.  For that reason, AAG has taken reasonable steps to maintain its secrecy.

13. The confidential and/or trade secret information of AAG to which Weir was privy and which is not generally known outside the Company includes, but is not limited to, information pertaining to AAG's financial statements, financial projections and budgets, annual revenues, capital spending budgets and plans, costs, business and marketing strategies, the names and capabilities of key personnel, information about AAG's customers, including but not limited to customer lists, customer files, pricing procedures, customer buying habits, identities of key contacts with customers, customer preferences regarding AAG's services, and customers' histories of doing business with AAG.

## The Employment Agreement

14. In October of 2015, in connection with AAG's hire of Weir, AAG presented to Weir, and Weir signed, an Employment Agreement.  A true and accurate copy of the Employment Agreement signed by Weir is attached hereto as Exhibit A.

15. Among the terms of the Employment Agreement is a non-competition and non-interference covenant.  Section 8.1 and 8.2 of the Employment Agreement provide as follows:

> 8.1 <u>Acknowledgments By Employee</u>.  Employee acknowledges that: (a) the services to be performed by him under this Agreement are of a special, unique and unusual character; (b) the Compensation provided to Employee hereunder constitutes good and sufficient consideration for Employee's agreements and covenants in this Section 8; (c) the provisions of this Section 8 are reasonable and necessary to protect Employer's business and its Affiliates; and (d) a breach by Employee of the covenants contained in this Section 8 is not susceptible to cure.
>
> 8.2 <u>Covenants of Employee</u>.  In consideration of the acknowledgments by Employee, and in consideration of the Compensation to be paid or provided to Employee by Employer, Employee covenants and agrees that Employee will not, directly or indirectly, whether or not for consideration:

>   (a)     during the Non-Competition Period: (i) solicit, divert or take away business from, or compete with Employer in the same or similar business as the business conducted by Employer; (ii) own, operate, control, finance, manage, advise, be employed or engaged by, perform any services for, invest in or otherwise become associated in any capacity with (other than holding less than two percent (2%) of the outstanding equity securities of such person having securities that are listed for trading on a national securities exchange), any business, company, partnership, organization, proprietorship, or other entity that engages in a business or businesses similar to those then conducted by Employer (a "Competitive Business"); or (iii) engage in any practice, the purpose or effect of which is to intentionally evade the provisions of this covenant;

16. The Employment Agreement also contains a provision prohibiting solicitation of other AAG employees. Section 8.2(b) of the Employment Agreement provides as follows:

>   (b)     during the Non-Competition Period, whether for Employee's own account or the account of any other person: (i) solicit or induce, directly or indirectly, whether or not for consideration, any employee or agent of Employer to terminate his or her relationship with Employer; or (ii) induce or attempt to induce any supplier or contractor of Employer to terminate or adversely change its relationship with Employer or otherwise interfere with any relationship between Employer and any of its suppliers or contractors; or (iii) employ, hire or solicit the employment of any person who was an employee of Employer or any of its Affiliates until six (6) months after such individual's employment relationship with Employer or any of its Affiliates has been terminated; or (iv) do any act to impair, prejudice or harm the goodwill of Employer or any of its Affiliates, or to prejudice or impair the relationship or dealing between Employer or any of its Affiliates and any of their customers, suppliers, contractors, designers, licensees, employees or other business relations.

17. Also among the terms of the Employment Agreement is a non-disclosure covenant. Section 7.2(a) of the Employment Agreement provides as follows:

>   7.2     <u>Agreements of Employee</u>. In consideration of the Compensation to be paid or provided to Employee by Employer under this Agreement, Employee covenants as follows:

    (a) <u>Confidentiality</u>.

     (i) During and at all times following the Employment Period, Employee will hold in confidence the Confidential Information and will not disclose it to any Person except:  (A) with the specific prior written consent of Employer; (B) as required by law, summons, subpoena or interrogatories (provided that Employee shall provide Employer with as much notice of such required disclosure as is reasonably possible); or (C) as otherwise expressly permitted by the terms of this Agreement.

     (ii) Any trade secrets of Employer will be entitled to all of the protections and benefits under applicable trade secret laws.  If any information that Employer deems to be a trade secret is found by a court of competent jurisdiction not to be a trade secret for purposes of this Agreement, such information will, nevertheless, be considered Confidential Information for purposes of this Agreement.  Employee hereby waives any requirement that Employer submit proof of the economic value of any trade secret or post a bond or other security.

     (iii) None of the foregoing obligations and restrictions applies to any part of the Confidential Information that Employee demonstrates was or became generally available to the public other than as a result of a disclosure by Employee.

     (iv) Employee will not remove from Employer's (or any or its Affiliate's) premises (except to the extent such removal is for purposes of the performance of Employee's duties at home or while traveling, or except as otherwise specifically authorized by Employer) any document, record, notebook, plan, model, component, device, or computer software or code, whether embodied in a disk or in any other form (collectively, the "<u>Proprietary Items</u>").  Employee recognizes that, as between Employer and Employee, all of the Proprietary Items, whether or not developed by Employee, are the exclusive property of Employer.  Upon termination of this Agreement by either party, Employee will return to Employer all of the Proprietary Items in Employee's possession or subject to Employee's control, and Employee shall not retain any copies, abstracts, sketches, or other physical embodiment of any of the Proprietary Items.

  18. Also among the terms of the Employment Agreement is a non-disparagement covenant.  Section 7.3 of the Employment Agreement provides as follows:  "Employee shall not, directly or indirectly, disparage of defame (commercially or personally) Employer or its Affiliates."

## The Promissory Note

  19. In January 2018, Weir sought a personal loan from AAG.

20. On or about January 12, 2018, Weir, Carol Weir, and 13 Little all executed as Maker a Promissory Note in favor of AAG in the principal amount of $120,000 (the "Promissory Note"). A true and accurate copy of the Promissory Note is attached hereto as Exhibit B.

21. The Promissory Note was secured by a Mortgage granted by 13 Little on real property having an address at 13 Little Sewickley Creek Road, Sewickley, PA 15143.

22. Repayment of the Principal and Interest under the Promissory Note was due and payable on July 15, 2018.

23. The Promissory Note in favor of AAG further specifies that if Weir's employment with AAG terminates for any reason whatsoever prior to repayment of the Principal and Interest, then any remaining balance of the Principal and Interest would become payable on or before Weir's final day of employment. The Promissory Note further provides that if said repayment is not made prior to Weir's final day of employment, AAG could withhold amounts due from Weir's final paycheck, and that if such withholding did not satisfy the remaining obligation under the Promissory Note, then AAG could seek repayment of the remaining obligation through any means permitted by law.

24. Defendants made no payments of Principal and Interest under the Promissory Note on or before July 15, 2018.

25. Defendants have made no payment of Principal and Interest under the Promissory Note at any time since the date of making the Promissory Note.

26. By reason of making no payments of Principal and Interest under the Promissory Note, and by reason of his separation from employment with AAG, Defendants are in default of their obligations under the Promissory Note.

**Weir's Abuse of the Company Credit Card**

27. In his role a Chief Operating Officer of AAG, Weir was provided with a Visa credit card connected to an account held by AAG (the "Company Visa").

28. The Company issues the Company Visa to a select number of its executives for their convenience as they travel and incur expenses on the Company's behalf.

29. Business expenses were paid by the Company, but any non-business expenses appearing on the Company Visa statement were the responsibility of the individual executive.

30. Weir, like any executive holding a Company Visa, was expected to submit to the Company a monthly expense report, so the Company's Controller could identify and separate business expenses from non-business expenses appearing on the monthly Company Visa statement.

31. Beginning in March 2016, and continuing through Weir's July 2019 resignation from employment, Weir never submitted to the Company's Controller a monthly expense report.

32. On multiple occasions in 2018 and 2019, the Company's Controller reminded Weir of the need for him to submit an expense report.

33. On other occasions, the Company's Controller provided Weir with a copy of the monthly Company Visa statement attributable to his use and asked him to identify which items were business-related and which were personal. Weir acknowledged to the AAG Controller charging some personal expenses to the Visa, but never provided detail sufficient to permit AAG to differentiate between his business and non-business expenses charged on the Visa.

34. For the period March 1, 2016 through July 17, 2019, the Company paid Company Visa charges attributable to Weir in the total amount of $452,921.60.

35. Upon information and belief, all or substantially all of the $452,921.60 in Weir's Company Visa charges were not for business-related expenses, but were instead personal charges made by Weir.

36. To date, Weir has not accounted for or repaid the money he charged on the Company Visa.

**Weir's Departure from AAG and Subsequent Activities in Violation of his Obligations**

37. On or about July 2, 2019, Weir's employment with AAG ceased when Weir abruptly communicated to AAG's President and CEO a demand for an exit package from AAG, which AAG interpreted as Weir's resignation from employment, which AAG accepted.

38. Following the cessation of his employment with AAG, Weir has engaged in a course of conduct designed to violate his legal obligations to AAG.

39. Upon information and belief, Weir has engaged in communications with other persons in the aviation industry, including, but not limited to, an owner and investor in several aviation enterprises, designed to disparage and defame AAG and its President & CEO and/or interfere with AAG's business relationships and prospective business relationships.

40. On or about October 16, 2019, AAG, through its legal counsel, sent Weir correspondence reminding him of his legal obligations to AAG under the Employment Agreement, including nondisclosure of confidential information, nonsolicitation, noncompetition, and his obligation not to defame or disparage AAG, along with his obligations not to misappropriate AAG's trade secrets. A true and accurate copy of that correspondence is attached hereto as Exhibit C.

41. Thereafter, upon information and belief, Weir engaged in communications with principals of an aviation company with whom AAG was in negotiations regarding a possible

business transaction. Those communications by Weir were designed to disparage AAG and influence those persons not to engage in any transaction with AAG.

42. On or about October 22, 2019, Weir attended a meeting in Ft. Lauderdale, Florida with the Chief Executive Officer of a Ft. Lauderdale-based competitor of AAG's in the air ambulance business.

43. Shortly before October 22, 2019, the Cleveland Clinic issued a Request for Proposal for Organ Procurement and Critical Care Transport Services. AAG currently holds the contracts with the Cleveland Clinic for Organ Procurement and Critical Care Transport Services, contracts it has held since 2009 and 2010 respectively.

44. During his employment with AAG in the position of Chief Operating Officer, Weir became intimately familiar with all aspects of AAG's contractual relationship with the Cleveland Clinic, including detailed information regarding AAG's operations, costs, personnel, scheduling, and finances relating to AAG's performance of its contract with the Cleveland Clinic.

45. Upon information and belief, as of October 22, 2019, the competitor with whom Weir met was preparing to submit a bid and/or had already submitted a bid in response to the Cleveland Clinic's Request for Proposal for Organ Procurement and Critical Care Transport Services.

46. Upon information and belief, during the October 22, 2019 meeting with the Chief Executive Officer of a Ft. Lauderdale-based competitor of AAG's, Weir sought employment with that company.

47. Upon information and belief, during the October 22, 2019 meeting, Weir discussed with the CEO of said competitor information about AAG including operating costs, pilot

scheduling, personnel costs, revenue streams to AAG, and its operations for the Cleveland Clinic.

48. Furthermore, Weir's expertise and knowledge of the air ambulance and on-demand charter aircraft business is solely the product of his experience at AAG. As a result, Weir's knowledge is largely undocumented and resides in Weir's memory. Weir's knowledge in this field, including his knowledge of AAG's confidential and/or trade secret information, is easily transferrable to a competitor and/or utilized by Weir on a competitor's behalf.

## COUNT I: BREACH OF CONTRACT/ANTICIPATORY BREACH OF CONTRACT

49. AAG incorporates by reference the foregoing paragraphs 1 through 48, as if fully rewritten and set forth herein.

50. The Employment Agreement is a valid and enforceable contract between AAG and Weir.

51. AAG has fully performed its obligations under the Employment Agreement.

52. Under the Employment Agreement, Weir has a contractual obligation not to become employed by any business that competes directly or indirectly with AAG for eighteen months following the end of his employment with AAG.

53. By seeking employment with AAG's direct competitor, Weir has breached or intends to breach Section 8.2 of the Employment Agreement.

54. Under the Employment Agreement, Weir also has a contractual obligation not to disparage or defame AAG. By his communications with others designed to disparage and defame AAG and its CEO, Weir has also violated Section 7.3 of the Employment Agreement.

55. Under the Employment Agreement, Weir also has a contractual obligation to hold in confidence and not to disclose to any person the Confidential Information of AAG. Through

his communications with the CEO of a competitor of AAG's, Weir has also violated and/or intends to violate Section 7.2(a) of the Employment Agreement.

56. As a result of Weir's breaches and threatened breaches of his contractual obligations under the Employment Agreement, AAG has suffered and will continue to suffer irreparable injury and damages in an amount to be proven at trial.

57. AAG is therefore entitled to (1) injunctive relief enjoining Weir's (a) commencement and/or continuation of employment with any competitor, (b) disparagement of AAG or its Affiliates, and (c) disclosure of any Confidential Information of AAG; and (2) monetary damages, in an amount to be determined at trial.

## COUNT II: TORTIOUS INTERFERENCE

58. AAG incorporates by reference the foregoing paragraphs 1 through 57, as if fully rewritten and set forth herein.

59. Weir has at all relevant times been aware of AAG's contractual relationships with its customers, including the Cleveland Clinic.

60. Weir has, without privilege to do so, attempted to interfere with the contractual relationships between AAG and its customers, including the Cleveland Clinic, by disclosing to a competitor of AAG's confidential and/or trade secret information of AAG.

61. Weir has, without privilege to do so, attempted to interfere with the contractual or prospective contractual relationships between AAG and counterparties in possible business transactions and with aircraft owners.

62. Weir's conduct, as described above, constitutes tortious interference with AAG's contractual relationship or prospective contractual relationships.

63. Weir's actions were willful, intentional, and taken with malicious intent and bad faith, thereby entitling AAG to punitive, in addition to, compensatory damages.

64. As a direct and proximate result of Weir's conduct, AAG has suffered irreparable harm and other damages, and will continue to do so in the future, the exact extent, nature, and amount of which will be established at trial.

65. AAG is therefore entitled to (1) injunctive relief enjoining Weir from interfering with AAG's contractual relationships with its customers; and (2) monetary damages in an amount to be determined at trial.

## COUNT III:  BREACH OF PROMISSORY NOTE

66. AAG incorporates by reference the foregoing paragraphs 1 through 65 of the Complaint as if fully rewritten and set forth herein.

67. As alleged above, Defendants entered into a Promissory Note dated January 2018 in favor of AAG in the principal amount of $120,000.  The Promissory Note was secured by a Mortgage granted by 13 Little, LLC on real property having an address at 13 Little Sewickley Creek Road, Sewickley, PA 15143.

68. Due to Defendants' defaults under the Promissory Note, the balance of Principal and Interest due on the Promissory Note is immediately due and payable, in an amount in excess of $120,000.

69. Defendants owe AAG the balance due on the Promissory Note, together with interest.  Alternatively, AAG seeks a judgment that it is entitled to foreclose on the real property having an address at 13 Little Sewickley Creek Road, Sewickley, PA 15143 that is subject to the Mortgage, and a judgment for any deficiency.

## COUNT IV:  CONVERSION

70. AAG incorporates by reference the foregoing paragraphs 1 through 69 of the Complaint as if fully rewritten and set forth herein.

71. Through his failure to account for $452,921.60 in expenses charged to his Company Visa card, Weir has exercised dominion and control over AAG's money in a manner inconsistent with AAG's ownership rights, such that Weir has converted AAG's money for his own benefit.

72. Weir's actions were and are willful, intentional, and were done with malicious intent and bad faith, thereby entitling AAG to punitive damages.

73. As a direct and proximate result of Weir's conduct, AAG has suffered irreparable harm and other damages, the exact extent, nature, and amount of which will be established at trial, but which exceeds $75,000.

## COUNT V:  UNJUST ENRICHMENT

74. AAG incorporates by reference the foregoing paragraphs 1 through 73 of the Complaint as if fully rewritten and set forth herein.

75. Weir has benefitted by charging personal expenses to the Company Visa, then not properly accounting for his charges to the Company Visa to delineate between business and personal charges.

76. Weir has likewise benefitted from refusing to repay AAG for any personal charges made to his Company Visa, thereby retaining for himself the value of those purchases.

77. It is and would be unjust and inequitable for Weir to retain benefits in the form of the personal charges he made to the Company Visa, at AAG's expense.

78. Weir has therefore been unjustly enriched by his conduct, to AAG's detriment.

79. Because Weir has been unjustly enriched, AAG is entitled to damages, the exact extent, nature, and amount of which will be established at trial, but which exceeds $75,000.

80. WHEREFORE, Plaintiff, Aitheras Aviation Group, LLC, prays for damages and such further relief as follows:

## AS TO COUNT I
## (BREACH OF CONTRACT/ANTICIPATORY BREACH OF CONTRACT)

A. For monetary damages in excess of $75,000, the exact nature and amount of which will be established at trial;

B. For a permanent injunction:

   1. enjoining Defendant Weir from commencing employment with any competitor of AAG in violation of his non-compete obligations under the Employment Agreement; and

   2. enjoining Defendant Weir from disparaging or defaming AAG or its President & CEO in violation of his non-disparagement obligations under the Employment Agreement;

   3. enjoining Defendant Weir from using or disclosing to any person the Confidential Information of AAG in violation of his non-disclosure obligations under the Employment Agreement.

C. For such other and further relief in law or equity to which this Court may find AAG entitled, including, but not limited to attorney's fees and costs of this action.

## AS TO COUNT II (TORTIOUS INTERFERENCE)

A. For monetary damages in excess of $75,000, the exact nature and amount of which will be established at trial;

B. For a permanent injunction :

      1. enjoining Weir from interfering with the contracts between AAG and any of its customers; and

      2. enjoining Weir from interfering with the prospective contractual relationships between AAG and the Cleveland Clinic; and

C.    For such other and further relief in law or equity to which this Court may find AAG entitled, including, but not limited to attorney's fees and costs of this action.

### AS TO COUNT III (BREACH OF PROMISSORY NOTE)

A.    For monetary damages in excess of $75,000, the exact nature and amount of which will be established at trial;

B.    For such other and further relief in law or equity to which this Court may find AAG entitled, including, but not limited to attorney's fees and costs of this action.

### AS TO COUNT IV (CONVERSION)

A.    For monetary damages in excess of $75,000, the exact nature and amount of which will be established at trial;

For such other and further relief in law or equity to which this Court may find AAG entitled, including, but not limited to attorney's fees and costs of this action.

### AS TO COUNT V (UNJUST ENRICHMENT)

A.    For monetary damages in excess of $75,000, the exact nature and amount of which will be established at trial;

B.    For such other and further relief in law or equity to which this Court may find AAG entitled, including, but not limited to attorney's fees and costs of this action.

## **JURY DEMAND**

A trial by jury is hereby demanded on all Counts included within Plaintiff's Complaint.

    Respectfully submitted,

    */s/ Todd F. Palmer*
    TODD F. PALMER  (0047582)

    */s/ P. Jason Dejelo*
    P. JASON DEJELO (0076801)
    CALFEE, HALTER & GRISWOLD LLP
    The Calfee Building
    1405 East Sixth Street
    Cleveland, Ohio 44114-1607
    216-622-8200 (phone)
    216-241-0816 (fax)
    tpalmer@calfee.com

    *Attorneys for Plaintiff*